**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LEONARD FUSHA and SUELA FUSHA | Case No. 24-cv-07848 |
| Plaintiff, | **AMENDED VERIFIED COMPLAINT** |
| -against- | |
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | |
| Defendants. | |

Plaintiffs, Leonard and Suela Fusha, by and through their attorneys, as and for their complaint against defendant JPMorgan Chase Bank, N.A., alleges and states as follows:

## NATURE OF THE CASE

1.      This action against JPMorgan Chase Bank for conversion, gross negligence, identity theft, deceptive business practices, and violations of federal electronic transfer laws against, is based on shocking, outrageous anti-consumer conduct by the bank.

2.      On September 11, 2023, a person maintaining an account with Chase sent a legitimate wire transfer of $35,965.00 to Plaintiffs' account at Chase. Shortly thereafter, that same person contacted Chase about another wire sent from the same account, on September 14, 2024, in the amount of $35,950.99, and reported that wire as unauthorized. Inexplicably, Chase confused these two wires.

3.      Chase then froze Plaintiffs' account and withdrew all of the funds – more than $70,000 – without any notice or explanation. Several months later, after the account holder repeatedly notified Chase about its mistake, the bank returned approximately 50% of the funds to

091535\2\170951075.v1

Plaintiffs, but kept more than $35,000, representing the amount of the unauthorized wire.

4.     The Plaintiffs repeatedly complained to Chase about its conduct and asked for their money to be returned, but Chase treated Plaintiffs as if they were criminals and refused to give them any information.

5.     For more than a year, Chase failed and refused to correct its error and, only after this lawsuit was filed, did the bank finally return the remaining $35,950.99 to Plaintiffs.

6.     To this date, Chase has never explained its conduct.

## PARTIES

7.     Plaintiff Leonard Fusha ("**Leo**") is an individual who resides at 198 Midland Avenue, Tuckahoe, New York, 10707.

8.     Plaintiff Suela Fusha ("**Suela**") is an individual who resides at 198 Midland Avenue, Tuckahoe, New York, 10707.

9.     Leo and Suela (together "**Fushas**") are husband and wife.

10.     Defendant JPMorgan Chase Bank, National Association ("**Chase**"), is a national bank organized and existing under and by virtue of the laws of the United States of America, having its principal place of business at 315 Vision Drive, Columbus, OH.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and total diversity exists between the parties (as the Fushas are citizens of New York and Chase is a citizen of Ohio).

12.     Venue is also proper, pursuant to 28 U.S.C. § 1441(a), as this action was initially filed in the Supreme Court of the State of New York, Westchester County.

091535\2\170951075.v1

## STATEMENT OF FACTS

13.    In 2023, the Fushas maintained an account at Chase ending in number 8060 (the **"Fusha Account"**).

14.    In 2023, Catherine Mouttet ("**Mouttet**") maintained an account at Chase ending in number 0071 (the "**Mouttet Account**").

15.    In 2023, Mouttet hired Gratia Contractors LLC ("**Gratia**") to renovate her apartment located at 300 East 54th Street, Apt. 35H, New York, NY 10022 (the "**Project**").

16.    Gratia is owned by the Fushas.

17.    On September 11, 2023, Mouttet sent a domestic wire transfer of $35,965.00 (the "**Fusha Wire**") to the Fusha Account.

18.    The Fusha Wire was intended by Mouttet to be a payment for Gratia in connection with the Project.

19.    A true and accurate copy of Chase's monthly statement for the Mouttet Account for the period September 1, 2023, through September 29, 2023 (**"Mouttet Account September Statement"**) is annexed as **Exhibit A**.

20.    The Mouttet Account September Statement shows the Fusha Wire being sent from the Mouttet Account to the Fusha Account.

21.    A true and accurate copy of Chase's monthly statement for the Fusha Account for the period August 9, 2023, through September 11, 2023 (**"Fusha Account September Statement"**) is annexed as **Exhibit B**.

22.    The Fusha Account September Statement shows a credit of $35,965.00 from the Mouttet Account.

23.    On September 14, 2023, a wire transfer of $35,950.99 was made from the Mouttet

Account to "Ratingsby Marketing LLC" (the "**Ratingsby Marketing Wire**").

24.     Upon information and belief, Mouttet reported the Ratingsby Marketing Wire to Chase as unauthorized (the **"Mouttet Wire Fraud Notice"**).

25.     Upon information and belief, Chase erroneously confused the Ratingsby Marketing Wire with the Fusha Wire.

26.     On September 29, 2023, Chase froze the Fusha Account and prevented the Fushas from withdrawing any funds from that account.

27.     On September 29, 2023, Chase withdrew $72,393.91 from the Fusha Account (the "**Unauthorized Bank Withdrawal**").

28.     The Unauthorized Bank Withdrawal represented all of the funds in the Fusha Account at that time.

29.      A true and accurate copy of the statement for the Fusha Account for the period September 12, 2023, through October 10, 2023 (the **"Fusha Account October Statement"**) is annexed as **Exhibit C**.

30.     The Unauthorized Bank Withdrawal is listed on the Fusha Account October Statement.

31.     On September 29, 2023, the Fushas went to an ATM machine intending to withdraw funds from the Fusha Account but they were unable to withdraw any funds from that account.

32.     On September 30, 2023, the Fushas went to their Chase branch located in Scarsdale, New York (the **"First Fusha Dispute"**) and reported the problem they had trying to withdraw funds in the Fusha Account from an ATM machine.

33.     When the Fushas reported the problem they had trying to withdraw funds from the

Fusha Account, they were told by the bank's employees that the Fusha Account had been frozen due to suspected fraud and they were advised to contact Chase's fraud department.

34.     On multiple occasions thereafter, the Fushas attempted to obtain information from Chase's fraud department about the freeze on the Fusha Account.

35.     After the Fushas were unable to obtain information from Chase's fraud department, the Fushas returned to their Chase branch multiple times to obtain information about the freeze on the Fusha Account, to regain access to this account, and to regain the funds that the bank took from in this account, but each time they were unable to obtain any information from bank's employees.

36.     The Fushas also contacted Mouttet and advised her of the freeze on the Fusha Account.

37.     Mouttet advised the Fushas that she had reported a wire transfer from her account as being unauthorized, but that it was not the Fusha Wire

38.     On October 11, 2023, Chase issued a credit to the Mouttet Account for $35,950.99 (the **"Mouttet Account Credit"**).

39.     A true and accurate copy of the Chase statement for the Mouttet Account for the period September 30, 2023, through October 31, 2023 (the **"Mouttet Account October Statement"**) is annexed as **Exhibit D**.

40.     The Mouttet Account October Statement shows a credit for the Ratingsby Marketing Wire.

41.     Upon information and belief, Chase used funds from the Fusha Account for the Mouttet Account Credit.

42.     On October 25, 2023, Mouttet sent an email to Cole Middleton (**"Middleton"**) at Chase who was, upon information and belief, Mouttet's personal banker at Chase, and advised him

that the bank made a mistake in recalling a legitimate wire (the **"First Mouttet Email"**) stating in pertinent part: "a legit wire was recalled from a vender I worked with on my apartment renovation."

43.    A true and accurate copy of First Mouttet Email is annexed hereto as **Exhibit E**.

44.    Mouttet told Middleton, in the First Mouttet Email, that she contacted Chase's "wire recall department" but was told that the bank had no record of the Fusha Wire stating, in pertinent part: "When I reached out to the wire recall department they told me there was no record of this recall."

45.    The next day, October 26, 2023, Mouttet sent another email to Middleton (the **"Second Mouttet Email"**) indicating the bank had made a mistake and asking him to connect her with the "wire transfer fraud team," stating:

> Can you connect with the wire transfer fraud team to confirm. If this came from my vender this will need to be returned to them and they are already anxious.

46.    A true and accurate copy of the Second Mouttet Email is annexed hereto as **Exhibit F**.

47.    In or around late October 2023, Chase's fraud department contacted the Fushas to inform them that they would never be given access to the Fusha Account again and that they would be barred from opening or holding any accounts with Chase (the **"Chase Blacklist Call"**).

48.    During the Chase Blacklist Call, Chase's fraud department refused to provide any further information to the Fushas despite their repeated requests.

49.    On December 22, 2023, Mouttet sent another email to Middleton (the **"Third Mouttet Email"**), once again informing him that the bank had made an error, stating:

> "the restored funds from the fraud case possibly may have been taken from a legitimate vender. The September 11 , [sic] 2023 wire

with the amount of $35,965 was legit to my contractor Leo Fuesa [sic].

50.     A true and accurate copy of the Third Mouttet Email is annexed as **Exhibit G**.

51.     On or about December 22, 2023, Chase issued a check to the Fushas in the amount of $36,442.92 (the "**First Reimbursement Check**").

52.     A true and accurate copy of the First Reimbursement Check is annexed hereto as **Exhibit H**.

53.     The First Reimbursement Check, however, was not for the full amount of the Unauthorized Bank Withdrawal. It was short by $35,950.99, which is the same amount as the Ratingsby Marketing Wire.

54.     For approximately eight months after the Fushas received the First Reimbursement Check, the Fushas continued contacting Chase, from time to time, seeking information about the freeze on the Fusha Account, and the missing funds in the amount of $35,950.99. Though the Fushas contacted Chase's fraud department, Chase's escalation department, and employees at the Fushas' Chase branch (namely, Nelrine L. Barrett, an Assistant Vice President at the branch), Chase's representatives repeatedly refused to provide any information.

55.     On August 7, 2024, an attorney representing the Fushas sent a letter to Chase's Legal Department demanding the return of $35,950.99 (the **"Second Fusha Dispute"**).

56.     A true and accurate copy of the Second Fusha Dispute (excluding exhibits) is annexed as **Exhibit I**.

57.     A copy of the Second Fusha Dispute was addressed to Jamie Dimon.

58.     After Chase received the Second Fusha Dispute, a representative of the bank's Executive Office contacted the Fushas' counsel and stated that the matter was under investigation (the **"Executive Office Initial Call"**).

59.     From time to time for more than a month after the Executive Office Initial Call, a representative of the Chase Executive Office named "Leo" contacted the Fusha's counsel and, each time, stated that the matter was under investigation.

60.     On September 20, 2024, the Fushas filed a summons and complaint against Chase, in the Supreme Court State of New York, County of Westchester, Index No. 69911/2024 (the **"Lawsuit"**).

61.     After the Lawsuit was filed, on or about October 10, 2024, Chase sent the Fushas a check in the amount of $35,950.99 (the **"Second Reimbursement Check"**).

62.     A true and accurate copy of the Second Reimbursement Check is annexed hereto as **Exhibit J**.

## FIRST CAUSE OF ACTION
### (Conversion)

63.     Plaintiffs' repeat and reallege each of the allegations set forth in paragraphs 1 through 62 above as if fully set forth herein.

64.     The Fushas had a possessory right to access and use the funds in the Fusha Account.

65.     On or about September 29, 2023, Chase interfered with the Fushas' possessory rights to the funds in the Fusha Account by: (i) withdrawing funds from the Fusha Account without authorization, and (ii) unjustifiably freezing the Fusha Account.

66.     Chase intentionally and wrongfully interfered with the Fushas' property by taking possession of the funds in the Fusha Account, as of September 29, 2023, and exercising unauthorized dominion and control over such funds.

67.     As a result of Chase's conduct, the Fushas are entitled to judgment against Chase in an amount to be determined at trial, plus punitive and exemplary damages in an amount sufficient to punish Chase and to discourage, by example, others in a situation similar to that of

Chase from engaging in the conduct complained of herein, but in no event less than ten million ($10,000,000) dollars, and reasonable attorneys' fees, interest, costs of suit and disbursements.

## SECOND CAUSE OF ACTION
### (Gross Negligence)

68.     Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 67 above as if fully set forth herein.

69.     In or around late September 2023, Chase began an investigation regarding the Mouttet Wire Fraud Notice.

70.     Chase owed the Fushas a duty to exercise reasonable skill and care when Chase (i) carried out its investigation into the Mouttet Wire Fraud Notice, (ii) made the decision to freeze and empty the Fusha Account, and (iii) responded to the

71.     Chase grossly breached its duty to exercise reasonable skill and care on numerous occasions.

72.     First, it is clear that Chase never properly investigated whether or not the Fusha Wire was actually fraudulent, as Mouttet's emails confirm that (i) the fraud department was unaware of any recall of the Fusha Wire as of October 25, 2024, nearly a month after the Fusha account was emptied, and (ii) Chase conspicuously returned around half of the Fushas' funds on the same day that Mouttet sent the Third Mouttet Email.

73.     Second, even if Chase did investigate the matter, there is no reasonable way Chase could have concluded the Fusha Wire was not valid, as the Fusha Wire and Ratingsby Marketing Wire were for different amounts and sent on different days.

74.     Third, even if the Fusha Wire could have been deemed fraudulent, or an error, there is no justification for Chase emptying and freezing the entire Fusha Account.  The Fushas were long-time account holders who frequently visited their local Chase branch.  There was nothing to

support a finding that the Fusha Account was fraudulent (a fact confirmed by Chase's eventual sending of the First Reimbursement Check and Second Reimbursement Check).

75.    Fourth, it took Chase over a year to recognize its error and send the Second Reimbursement Check, which only occurred after the Fushas initiated this action.

76.    Chase's breach of its duty was the actual and proximate cause of the harm suffered by the Fushas as it resulted in their inability to access and use the Fusha Account.

77.    Specifically, the Fushas suffered actual damages from Chase's breach including, but not limited to: (i) having all of the funds in the Fusha Account frozen; (ii) the friends and family loans the Fushas took to cover their reasonable and necessary living expenses; (iii) the inability to use the funds returned in the First Reimbursement Check from September 29, 2023, until December 22, 2023; and (iv) the inability to use the funds returned in the Second Reimbursement Check from September 29, 2023, until October 10, 2024.

78.    Chase treated the Fushas like they were criminals.

79.    Chase's actions caused the Fushas to suffer severe financial hardship both personally and in connection with their business.

80.    The Fushas were unable to buy holiday presents for their children in December 2023.

81.    The Fushas had insufficient funds for their ordinary and necessary living expenses and had to borrow funds from friends and family.

82.    Leo suffered severe emotional distress as a result of Chase's conduct.

83.    Suela suffered severe emotional distress as a result of Chase's conduct.

84.    As a result of Chase's conduct, the Fushas are entitled to judgment against Chase in an amount to be determined at trial, plus punitive and exemplary damages in an amount

sufficient to punish Chase and to discourage, by example, others in a situation similar to that of Chase from engaging in the conduct complained of herein, but in no event less than ten million ($10,000,000) dollars, and reasonable attorneys' fees, interest, costs of suit and disbursements.

### THIRD CAUSE OF ACTION
**(Theft of Identity)**

85.    Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 84 above as if fully set forth herein.

86.    Chase knowingly transferred the funds represented by the Unauthorized Bank Withdrawal.

87.    The Unauthorized Bank Withdrawal occurred without the Fushas consent.

88.    The Unauthorized Bank Withdrawal constituted a theft of the Fushas' identity under GBL § 380-s.

89.    The Fushas' credit suffered as a result of the Unauthorized Withdrawal, as they could no longer pay their bills when due.

90.    Chase's failure to comply with GBL § 380-s was willful given: (i) Chase failed to properly investigate whether or not the Fushas had received a fraudulent wire; (ii) Chase removed monies from the Fusha Account which rightfully belonged to the Fushas; (iii) a simple review of Chase's own records would have indicated that both the Fusha Wire and the additional $35,950.99 should never have been removed from the Fusha Account; and (iv) it took Chase over one year to admit their error and send the Second Reimbursement Check.

91.    As a result of Chase's non-compliance with GBL § 380-s, the Fushas suffered actual and consequential damages.

92.    As a result of Chase's conduct, the Fushas are entitled to judgment against Chase in an amount to be determined at trial, plus punitive and exemplary damages in an amount

sufficient to punish Chase and to discourage, by example, others in a situation similar to that of

Chase from engaging in the conduct complained of herein, but in no event less than ten million

($10,000,000) dollars, and reasonable attorneys' fees, interest, costs of suit and disbursements.

### FOURTH CAUSE OF ACTION
### (Unfair and Deceptive Business Practices)

93.     Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1

through 91 above as if fully set forth herein.

94.     Chase has engaged in consumer-oriented conduct which is deceptive or misleading

in a material way, constituting unfair and deceptive business practices in violation of § 349 of the

New York General Business Law ("**GBL**").

95.     Chase's deceptive and misleading conduct includes, but is not limited to, Chase's

promotion of "fraud prevention tools" like Chase Connect® and Cashflow360$^{SM}$, which tout the

efficacy of Chase's fraud prevention program.

96.     Chase's false, misleading and deceptive statements and misrepresentations of fact

related to their fraud investigations and account policies were and are directed to consumers.

97.     Chase's false, misleading and deceptive statements of fact related to their fraud

investigations and account policies are likely to mislead a reasonable consumer acting reasonably

under the circumstances.

98.     Chase's false, misleading and deceptive statements of fact related to Chase's fraud

investigations and account policies have resulted or are likely to result in consumer injury or harm

to the public interest.

99.     As a result of Chase's false statements, the Fushas suffered actual damages.

100.    Accordingly, the Fushas are entitled to judgment against Chase in an amount to be

determined at trial, plus treble damages, and reasonable attorneys' fees, interest, costs of suit and

091535\2\170951075.v1

disbursements.

## FIFTH CAUSE OF ACTION
### (Violation of the Electronic Fund Transfer Act)

101.    Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 100 above as if fully set forth herein.

102.    The Fusha Account is an "account" as defined by 15 USC § 1693(a)(2) as it was a checking account used primarily for the Fushas' personal, family, and household needs.

103.    At all relevant times, the Fushas were 'consumers' under 15 USC § 1693a(6) as they are natural persons using the account primarily for personal, family, or household purposes.

104.    The Unauthorized Bank Withdrawal was an 'electronic fund transfer' under 15 USC § 1693a(7) as it was initiated by Chase electronically to debit the Fushas' account.

105.    Chase's errors in wrongfully emptying and freezing the Fusha Account are qualified errors within the scope of 15 USC § 1693f(f)(2-4), and (6).

106.    On September 30, 2023, upon realizing the Fusha Account was frozen, the Fushas provided the Chase branch with the First Fusha Dispute, as required by 15 USC § 1693f(a).

107.    On August 7, 2024, Chase was once again notified of their error, when they received the Second Fusha Dispute.

108.    Under 15 USC § 1693f(a) and 12 CFR § 1005.11(c), Chase was required to:

a.    Conduct a good faith investigation of the error;

b.    Review all relevant records and information;

c.    Determine whether an error occurred;

d.    Report results to the Fushas within 10 business days; and

e.    Either correct the error within 1 business day or provide a written explanation of its findings.

13

109.    If Chase needed more than 10 business days to investigate, 15 USC § 1693f(c) required Chase to:

       a.   Provisionally recredit the Fushas' account within 10 business days;

       b.   Include interest on the amount in dispute; and

       c.   Give the Fushas full use of the provisionally recredited funds Chase failed to provide any provisional credit during its investigation.

110.    Chase's investigation, and subsequent return of the First Reimbursement Check, violated 15 USC § 1693f(a) because it occurred 57 business days after the First Fusha Dispute.

111.    Chase's investigation, and subsequent return of the Second Reimbursement Check, violated 15 USC § 1693f(a) because it occurred 257 business days after the First Fusha Dispute.

112.    Chase's investigation, and subsequent return of the Second Reimbursement Check, violated 15 USC § 1693f(a) a second time, because it occurred 45 business days after the Second Fusha Dispute.

113.    Upon information and belief, Chase failed to follow its own error resolution procedures as required by 12 CFR § 1005.11(b), which failure resulted in the extended delay in resolving this matter.

114.    Chase failed to credit the Fushas with interest for any monies withdrawn from the Fusha Account, which is a violation of 15 USC § 1693f(b).

115.    Chase failed to provide the written documentation required by 15 USC § 1693f(d) and 12 CFR § 1005.11(d), including:

       a.   Providing a written explanation of investigation findings; and

       b.   Providing the documents Chase relied upon in its investigation.

116.    The Fushas are entitled to treble damages under 15 USC § 1693f(e) as Chase: (i)

failed to provisionally recredit the Fushas upon notification of the error, (ii) failed to conduct a good faith investigation into the Fusha Account, (iii) could not have reasonably concluded that the Fusha Account was appropriately charged $72,393.91, given Chase conceded their error when it returned the First Reimbursement Check and the Second Reimbursement Check.

117.    The Fushas are entitled to statutory damages under 15 USC § 1693m(a)(2)(A) independent of their actual damages for each EFTA violation.

118.    Accordingly, the Fushas are entitled to judgment against Chase in an amount to be determined at trial, plus treble damages, interest on the Unauthorized Bank Withdrawal, and reasonable attorneys' fees, interest, costs of suit and disbursements.

**WHEREFORE** Plaintiffs Leonard Fusha and Suela Fusha requests judgment against Defendant as follows:

A. on the First Cause of Action, judgment against Chase, in an amount to be determined at trial, together with interest and costs, plus punitive and exemplary damages in an amount sufficient to punish Chase and to discourage, by example, others in a situation similar to that of Chase from engaging in the conduct complained of herein, but not less ten million ($10,000,000) dollars, and reasonable attorneys' fees, interest, costs of suit and disbursements;

B. on the Second Cause of Action, judgment against Chase, in an amount to be determined at trial, plus punitive and exemplary damages in an amount sufficient to punish Chase and to discourage, by example, others in a situation similar to that of Chase from engaging in the conduct complained of herein, but in no event less than ten million ($10,000,000) dollars, and reasonable attorneys' fees, interest, costs of suit and disbursements;

15

C. on the Third Cause of Action, judgment against Chase, Chase in an amount to be determined at trial, plus punitive and exemplary damages in an amount sufficient to punish Chase and to discourage, by example, others in a situation similar to that of Chase from engaging in the conduct complained of herein, but in no event less than ten million ($10,000,000) dollars, and reasonable attorneys' fees, interest, costs of suit and disbursements;

E. On the Fourth Cause of Action, judgment against Chase, in an amount to be determined at trial, plus treble damages, and reasonable attorneys' fees, interest, costs of suit and disbursements;

F. On the Fifth Cause of Action, judgment against Chase, in an amount to be determined at trial, plus treble damages, and reasonable attorneys' fees, interest, costs of suit and disbursements; and

G. Together with such other and further relief as this Court deems just, equitable and proper.

Dated: New York, New York
      November 11, 2024

**TARTER KRINSKY & DROGIN LLP**

By: /s/ David H. Wander
      David H. Wander
1350 Broadway
New York, New York 10018
(212) 216-8000
dwander@tarterkrinsky.com
*Attorneys for Plaintiffs*

16

## VERIFICATION

STATE OF NEW YORK          )
                               ss.:
COUNTY OF WESTCHESTER)

        Suela Fusha, being duly sworn, deposes and says she is an individual Defendant in this action; she

has read the foregoing *Amended Verified Complaint* and knows the contents thereof; the same is true based

on her own knowledge and her review of available records.

                                                SUELA FUSHA

Sworn to me this 11TH
day of November 2024

Notary Public

LISA KHADER
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01KH6171834
Qualified in Westchester County
Commission Expires July 30, 2027

091535\2\170951075.v1